UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
LIBERTY MUTUAL FIRE INSURANCE :
COMPANY *as subrogee of* TAP ELECTRICAL : 05 Civ. 8396 (RJH)
CONTRACTING SERVICE, INC., :
:
                Plaintiff, :
:
    -against- : **MEMORANDUM OPINION**
: **AND ORDER**
E.E. CRUZ & CO., INC., MALCOLM PIRNIE, :
INC., THE CITY OF NEW YORK, and THE :
CITY OF NEW YORK DEPARTMENT OF :
ENVIRONMENTAL PROTECTION, :
:
                Defendants. :
:
---------------------------------------------------------------x

      Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") brings this action, as subrogee of TAP Electrical Contracting Service, Inc. ("TAP"), to recover damages allegedly caused by the negligence of defendants E.E. Cruz & Co., Inc., Malcolm Pirnie, Inc., the City of New York, and the City of New York Department of Environmental Protection during the course of a construction project in Flushing, New York. Defendant the City of New York (the "City") now moves [18] to dismiss the first amended complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief may be granted.

## BACKGROUND

      Liberty Mutual brings this suit as subrogee of a City contractor seeking recovery of $2,516,355.87 it paid to its insured—TAP—for property damage sustained by TAP, under a negligence theory against the City and two other contractors at the construction site. For

purposes of this motion only, the factual allegations contained in plaintiff's Complaint are assumed true.

The City is the owner of a project in Flushing, Queens, described as the "Flushing Bay Combined Sewer Overflow Retention Facility" (the "Project"). (Compl. ¶¶ 11–12.) The Project called for the underground installation of fifteen concrete sewage retention tanks, each over 200 feet long and five stories high. (*Id.* ¶ 13.) Defendant Malcolm Pirnie was hired to be Construction Manager for the Project. (*Id.* ¶ 14.) TAP was the successful prime electrical contract bidder under Contract No. CS4-4E (the "Contract") (*id.* ¶ 16),[1] and was to provide and install electrical systems and components for the Project (*id.* ¶ 17). Defendant Cruz was the successful prime civil contract bidder for the Project under Contract No. CS4-4G, and pursuant to that contract built most, if not all, of the Project structure. (*Id.* ¶ 18.)

Liberty Mutual alleges that defendants' negligence caused damages to TAP's equipment and uninstalled electrical components. Specifically, plaintiff alleges that "[d]uring the course of the project, as a direct result of the negligence of each of the Defendants, millions of gallons of sewage damaged the site causing damage to TAP's equipment and uninstalled electrical components stored at the project site prior to the loss, and electrical components installed at the project site by TAP prior to the loss." (*Id.* ¶ 10.) The sewage flood that damaged TAP's property was allegedly caused when defendants prematurely connected the existing sewage system to the Project site via the Diversion Chambers, which were improperly secured with temporary plywood bulkheads. (*Id.* ¶¶ 19–23.) As the result of a storm, the sewer filled with millions of gallons of sewage,

---

[1] The Contract, although mentioned in the Complaint, is not attached to the pleadings. A copy of the Contract was provided by the City with its motion to dismiss. (Proshansky Decl. Ex. 2.)

2

which burst through the temporary bulkheads, filling the Diversion Chambers and then the facility at the Project site.  (*Id.* ¶¶ 24–26.)  TAP's equipment and installed and uninstalled electrical components were damaged by the flood (*id.* ¶ 27), and pursuant to its insurance policies with Liberty Mutual—specifically, Liberty Mutual Policy No. MS2-121-062338-514/3 (contractors' equipment policy) and Liberty Mutual Policy No. MS2-121-062338-524/1 (installation floater policy) (*id.* ¶ 28)—Liberty Mutual paid $2,516,355.87 to reimburse TAP for its loss (*id.* ¶ 29).

Pursuant to the terms and conditions of the aforementioned policies between Liberty Mutual and TAP, Liberty Mutual has become subrogated to TAP's rights and causes of action against any party responsible for the loss.  (*Id.* ¶ 30.)

Under the terms of the Contract, TAP agreed to procure a commercial general liability insurance policy prior to commencing work at the site.  The policy was to name the New York City Department of Environmental Protection as additional insured, "and endorsed to cover liability assumed by the Contractor under the indemnity provisions of [the Contract].  This insurance policy must be maintained during the life of the contract, and shall protect the City, the Contractor and its subcontractors performing work at the site from claims for property damage and/or bodily injury which may arise from operations under this contract, whether such operations are performed by the Contractor or anyone directly or indirectly employed by the Contractor."  (Contract, Proshansky Decl. Ex. 2 at 245.) Pursuant to this contract provision, TAP procured from Liberty Mutual a comprehensive general liability insurance policy (Liberty Mutual Policy No. TB1-121-062338-438) (hereinafter "TAP CGL Policy")[2]  that contained an endorsement entitled

---

[2] The TAP CGL Policy is not identified in the Complaint, nor does this policy form the basis of plaintiff's subrogated claim against defendants.

3

"Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Contract with You." The endorsement reads: "Who is insured is amended to include as an insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured." (TAP CGL Policy, Proshansky Decl. Ex. 3 at LM 10056.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12 must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and <u>relied</u> in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (emphasis added). Therefore, when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take that document into consideration in deciding a defendant's motion to dismiss, without converting the motion into one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

However, when a party submits additional evidence to the Court in connection with a motion to dismiss, beyond the scope of those allowed under, e.g., *Brass* and *Cortec*, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or 'convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(b);[3] 5C Wright & Miller, *Federal Practice and Procedure* § 1366. "This conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the district court relied on material outside the complaint in ruling on the motion." *Friedl*, 210 F.3d at 83 (quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999)). It is therefore error to "'consider affidavits and exhibits submitted by' defendants, or rel[y] on factual allegations contained in legal briefs or memoranda," in ruling on a 12(b)(6) motion to dismiss. *Id.* at 83–84 (citing *Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991); *Fonte*, 848 F.2d at 25).

The motion presently pending before the Court seeks dismissal of the Complaint against the City under New York's antisubrogation rule. It is not disputed that the resolution of this motion requires the Court to consider both the Contract between TAP and the City and the TAP CGL Policy, which together form the basis of the City's antisubrogation defense. As mentioned at *supra* notes 1 and 2, the Contract is mentioned in the Complaint but is neither attached nor incorporated by reference, and the TAP CGL

---

[3]Rule 12(b) provides in relevant part:
> If, on a motion asserting the defense numbered (6) to dismiss for a failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.

Policy is wholly absent from plaintiff's allegations. The propriety of considering matters beyond the pleadings was specifically addressed by the parties in letters to the Court submitted after the motion was fully briefed. Plaintiff's letter, dated January 26, 2006 ("Pl.'s Letter"), attached a copy of Judge Hellerstein's opinion in *In re Sept. 11 Property Damage & Business Loss Litigation*, 2006 WL 62019 (S.D.N.Y. Jan. 12, 2006). In that case, Judge Hellerstein denied a defendant's motion to dismiss the complaint against it under Rule 12(b)(6) on antisubrogation grounds because the motion required him to consider documents not incorporated in the pleadings or integral to the complaint. *Id.* at *12. In its letter, plaintiff argues that because the City's motion relies on the Contract that—in its view—is not integral to its subrogation claim but only to the City's defense, the Court should similarly deny the City's motion. (Pl.'s Letter 2.) However, plaintiff has at no time raised any objection to the Court's consideration of the TAP CGL Policy for the purposes of this motion, and indeed addresses the City's arguments with respect to the TAP CGL Policy endorsement at great length in its opposition brief. (*See generally* Opp'n) In response to plaintiff's letter, the City submitted a letter dated February 1, 2006 arguing that the circumstances in the motion before Judge Hellerstein differed significantly from those at issue here, and further positing that the Contract is in fact integral to the Complaint. While whether the Contract is in fact integral to the Complaint or incorporated by reference (*see* Compl. ¶ 16) is perhaps a closer question, it is beyond cavil that the TAP CGL Policy, the terms of which form a substantial basis for the City's antisubrogation defense, is neither mentioned in the Complaint nor integral to plaintiff's claim, as its subrogated claim results from Liberty Mutual's payment for damages sustained by TAP under two other insurance policies (*see id.* ¶ 28). Therefore the resolution of this motion

6

requires the Court to consider matters outside the pleadings, which fact in turn requires the Court to decide whether to exclude the additional material and deny the motion, or convert the motion to one for summary judgment.  *See* Fed. R. Civ. P. 12(b).

While the Second Circuit has frequently "held that a district court ordinarily must give notice to the parties before converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading," *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (citing *Kopec*, 922 F.2d at 154–55), "the essential inquiry is whether the parties should reasonably have recognized the possibility that the motion might be converted or whether they were taken by surprise and deprived of reasonable opportunity to present material pertinent to a summary judgment motion," *Malatesta v. Credit Lyonnais*, 03 Civ. 3690 (MBM), 2004 WL 1092148, at *2 (S.D.N.Y. May 17, 2004) (citing *Gurary*).  Having submitted the materials outside the pleadings for the Court's consideration, a conversion of the City's motion to one for summary judgment can hardly take it by surprise.  Plaintiff also clearly recognized the possibility that the motion might be converted, having noted the possibility in its opposition memorandum of law (Opp'n 5 n.1),[4] and had an opportunity to present any material pertinent to a potential summary judgment motion when it submitted its opposition.  Indeed, unless the Court finds that the terms of the Contract or Policy are ambiguous and must resort to extrinsic evidence to determine the parties' intent—which it does not—the Contract and Policy are the *only* materials pertinent to this motion.  Because both parties have had a reasonable opportunity, therefore, to present all material pertinent to the question of whether the

---

[4] The footnote reads:  "Even if the Court were to treat this as a motion for summary judgment rather than as a motion to dismiss because the City's motion relies on materials outside the Amended Complaint, *see* Fed. R. Civ. P. 12(c), denial of the City's motion remains proper, as summary judgment for the City cannot be granted unless the City's construction of the contracts is supported by "the plain meaning of the language employed" without resort to extrinsic evidence, *see Crane Co. v. Coltec Indus. Inc.*, 171 F.3d 733, 737 (2d Cir. 1999), which it is not.  (Opp'n 5 n.1.)

7

antisubrogation rule ought to apply in this case, and have fully addressed these issues in their briefs, the City's motion will be treated as one for summary judgment.  *See Tewksbury v. Ottoway Newspapers*, 192 F.3d 322, 325 n.1 (2d Cir. 1999).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).  In deciding such a motion, this Court "must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor."  *Id.*

## DISCUSSION

The City proffers two grounds for dismissal.  First, as noted above, the City argues that Liberty Mutual's claim is barred by the antisubrogation rule.  Second the City argues that Liberty Mutual seeks recovery in tort, but because any legal duties owed by the City to TAP were placed on the city under their contract, they are not cognizable in tort.  Because the Court finds that plaintiff's suit against the City is barred by the antisubrogation rule, it does not reach the City's second argument.

The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.  In a diversity action, a federal court applies state substantive law in accordance with the choice-

of-law provisions of the forum state. *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 n.4 (2d Cir. 2002). Since the site of the occurrence is in New York, and defendants are located in New York (except for defendant Cruz which is organized and existing under the laws of New Jersey), and since neither party to this motion has raised a choice-of-law issue, the Court finds that New York law, including its antisubrogation rule, governs. *See Hartford Cas. Ins. Co. v. Ribellino Family Ltd. P'Ship*, 2005 WL 1006016, at *2 (E.D.N.Y. Apr. 26, 2005).

Under New York law, an insurer that has paid on its insured's claim has the common law right to subrogation against the person who is responsible for the events underlying the claim. *See, e.g.*, *North Star Reinsurance Corp. v. Continental Ins. Co.*, 82 N.Y.2d 281, 294 (N.Y. 1993). However, under the antisubrogation rule, "an insurance company cannot recover from its own insured for the very risk for which the insured was covered." *Dillion v. Parade Mgmt. Corp.*, 702 N.Y.S.2d 368, 370 (N.Y. App. Div. 2000). This exception is based on the public policy goals of preventing an insurer from passing a loss to its own insured, and guarding against the potential for conflict of interest that may affect an insurer's incentive to provide a vigorous defense for its insured. *Id.* The antisubrogation rule is implicated not only when an insurer has a duty to indemnify its insured, but also when it has a broader duty to defend its insured. *See Pitruzello v. Gelco Builders, Inc.*, 757 N.Y.S.2d 280, 282 (N.Y. App. Div. 2003). Furthermore, the antisubrogation principle bars claims not only against the individual or entity who is directly insured, but also to "additional insureds" when there is an express indemnity agreement. *Allianz Ins. Co. v. Otero*, 353 F. Supp. 2d 415, 426–27 (S.D.N.Y. 2004).

As discussed above, the Contract between TAP and the City required TAP to procure insurance protecting the City "from claims for property damage and/or bodily injury which may arise from operations under this contract, whether such operations are performed by the [TAP] or anyone directly or indirectly employed by the [TAP]." (Contract, Proshansky Decl. Ex. 2 at 245.)  The TAP CGL Policy endorsement additionally insures the City "only with respect to liability arising out of [TAP's] ongoing operations performed for [the City]."  (TAP CGL Policy, Proshansky Decl. Ex. 3 at LM 10056.)

The City argues that that antisubrogation rule applies to the instant case because plaintiff's claim for property damage "arises out of TAP's operations"—i.e., the very risk for which the City is an additional insured under the TAP CGL Policy.  By contrast, plaintiff argues that the antisubrogation rule does not apply here because the TAP CGL Policy, which names the City as an additional insured, does *not* cover the "very risk" for which plaintiff seeks reimbursement, because (1) pursuant to the terms of the Contract, TAP was required only to secure coverage protecting the City from third-party claims for property damage or bodily injury arising out of operations performed by TAP (or its subcontractors), (2) pursuant to the terms of the relevant endorsement, the City was not insured against that risk because the "mere presence of property and materials" does not fall within the policy's definition of "operations," which instead requires some "action" by TAP.

The Court will address first plaintiff's argument that the Contract required TAP to procure insurance protecting the City only from third-party claims for property damage or bodily injury.  While the more typical case applying the antisubrogation rule involves third-party claims against an additional insured, agreements requiring that a party procure a

10

policy protecting another party from liability and the resulting additional insured endorsements in commercial general liability policies are not construed to preclude coverage for the additional insured against claims of negligence by the named insured against the additional insured. For example, in *Royal Insurance Co. of America v. 342 Madison Ave. Associates*, 617 N.Y.S.2d 297 (N.Y. App. Div. 1994), plaintiff-insurer's subrogor leased space in a building from defendant. Pursuant to the lease, the subrogor was required to obtain insurance for the premises covering the defendant from liability. The subrogor obtained a general liability policy from plaintiff, including an endorsement listing the defendant as an additional insured. *Id.* at 389. This endorsement covered the defendant for any liability "arising out of the ownership, maintenance, or use of the premises." *Id.* When there was water damages to the subrogor's business, plaintiff paid pursuant to the policy, and brought suit seeking reimbursement from the defendant-lessor as the alleged cause of water damage. The Appellate Division unanimously reversed the New York Supreme Court's denial of summary judgment against the defendant, holding that the endorsement was unambiguous and that the antisubrogation rule required dismissal. *See also Utica Mut. Ins. Co. v. Watertown Indus. Ctr. Local Dev. Corp*, 781 N.Y.S.2d 392, 392 (N.Y. App. Div. 2004) (assuming that endorsement naming the defendant as an additional insured, "only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [lessee]," afforded the defendant coverage for its own alleged negligence in an action brought by lessee's subrogee). If the parties intended to exclude coverage for claims *by* TAP *against* the City for its negligence, such language could have been easily added to the endorsement. *See Consol. Edison Co. v. Hartford Ins. Co.*, 610 N.Y.S.2d 219, 220 (N.Y. App. Div. 1994).

11

The Court now turns to the subject of the parties' central debate: whether the damage sustained to TAP's equipment and installed and uninstalled electrical components at the Project sites <u>arose from the performance of TAP's ongoing operations</u>, under the terms of the TAP CGL Policy. In considering the parties' arguments with respect to the meaning the relevant terms of the Policy, the Court notes "the general rule of construction to be used in interpreting insurance policies is that words are to be given their ordinary meaning and, if an ambiguity arises, it should be resolved in favor of the insured." *Long Island R.R Co. v. Interboro Mut. Indem. Ins. Co.*, 444 N.Y.S.2d 140 (N.Y. App. Div. 1981); *see also Royal Ins. Co. of Am. v. 342 Madison Ave. Assocs.*, 617 N.Y.S.2d 297, 297 (N.Y. App. Div. 1994) (citing *Chang v. Gen. Accident Ins. Co. of Am.*, 598 N.Y.S.2d 178, 180 (N.Y. App. Div. 1993)) ("[A]ny ambiguity in an insurance contract must be construed more favorably to the insured and strictly against the insurer.").

Not unexpectedly, the City supports a broad construction of the term "arising out of," arguing that the damage caused by the flood arose out of TAP's ongoing operations under the Contract because "'the general nature of the operation in the course of which the injury was sustained' includes TAP's operations at the Project site." (Def.'s Supp. Mem. 16 (quoting *Consol. Edison Co.*, 610 N.Y.S.2d at 221).) Under New York law, the term "arising out of" in general liability insurance contracts is indeed quite broad. As this Court previously observed in *Landpen Co., L.P. v. Maryland Casualty Co.*, 2005 WL 356809 (S.D.N.Y. Feb. 15, 2005):

> In the insurance context, courts in New York have deemed the words "arising out of" to be "broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with" the subject of the exclusion.

12

*Id.* at *6 (construing New York law); *see also Consol. Edison Co. of N.Y., Inc. v. U.S. Fid. & Guar. Co.*, 697 N.Y.S.2d 620, 620 (N.Y. App. Div. 1999) (Sullivan, J.P. concurring) ("In construing the expression 'arising out of' in the context of a liability policy exclusion which excludes injuries arising out of the ownership, maintenance, or use of a motor vehicle, the Court held it to mean originating from, incident to, or having connection with the use of the vehicle.  There is no reason to accord the language a less expansive interpretation when contained in an additional insured definition."); *Aetna Cas. & Surety Co. v. Liberty Mutual Ins. Co.*, 459 N.Y.S.2d 158, 161 (N.Y. App. Div. 1983) ("The words 'arising out of' have 'broader significance than the words caused by, and are ordinarily understood to mean originating from, incident to, or having a connection with the use of the vehicle"); *People v. Young*, 596 N.Y.S.2d 994, 995 (N.Y. Sup. Ct. 1993) (construing statute authorizing Attorney General's investigation of Medicaid Program and noting that "[t]he words 'arising out of' are ordinarily understood to mean originating from, incident to or having connection with").  The New York Court of Appeals has held that "the phrases 'based on' and 'arising out of' . . . are unambiguous and legally indistinguishable," and that both call for the application of a "but-for" causation test in order to determine coverage.  *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.*, 668 N.E.2d 404, 405 (N.Y. 1996).  In light of the foregoing, to the extent plaintiff presses a narrow reading of "arising out of" for the purposes of understanding what type of causal connection is required between the occurrence and the "ongoing operations performed" by TAP in determining the scope of coverage for the City under the endorsement, its argument is not compelling.

Plaintiff next suggests TAP's "ongoing operations" only exist when some "action" is being taken by TAP—the implication being that any occurrence taking place when action is not being taken cannot be covered under the terms of the relevant endorsement. However, this interpretation of "ongoing operations" is not readily supported by the language of the additional insured endorsement. Following the language insuring additional insureds for "liability arising out of . . . ongoing operations" come the relevant express exclusions, including:

> b. "Bodily injury" or "property damage" occurring after:
> (1) All work, including materials, parts or equipment furnished in connection with such work on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or
> (2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

(TAP CGL Policy, Proshansky Decl. Ex. 3 at LM 10056–LM 10057.) Reading this exclusion together with the coverage portion of the endorsement compels the conclusion that "ongoing operations" encompasses all performance under the Contract that occurs *prior* to the completion of the contracted work. If the Court were to adopt plaintiff's proposed interpretation of the term, coverage for the City would start and stop depending on whether individuals employed by TAP or its subcontractors were physically on site taking some form of "action"—but it is unclear how one would determine what type of "action" is then sufficient to trigger coverage. Plaintiff also argues that the definitions section of the TAP CGL Policy creates a distinction between the terms "work" and "operations" that takes the presence of TAP's equipment at the site outside the scope of the term "operations." The Policy defines "Your Work" to mean "(1) Work or operations

14

performed by you or on your behalf; and (2) Materials, parts or equipment furnished in connection with such work or operations." (TAP CGL Policy, Proshansky Decl. Ex. 3 at LM 10086.) This definition in turn relates to an exclusion with respect to "Damage to Your Work" that excludes from coverage "'Property damage to 'your work' arising out of it or any part of it <u>and</u> included in the 'products-completed operations hazard.'" (*Id.* at LM 10075) (emphasis added). "Products-completed operations hazard," in turn, is defined in relevant part to include:

> all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except: . . . . (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times: (a) When all of the work called for in your contract has been completed. (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site. (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

(*Id.* at LM 10085.) First, it is worth noting that, reading this exclusion narrowly and according to a strict construction, *see Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006), the property damage alleged here does not fall within the scope of this exclusion, because at the time of the occurrence the work under the contract had not yet been completed. This exclusion in fact reinforces the conclusion that the distinction the Policy is most concerned with drawing is between occurrences that transpire before the completion of work under the Contract (which are covered) and ones that transpire once work is complete (which are not covered). Secondly, plaintiff's suggestion that the definition of "Your work" in the Policy "makes clear" that "'ongoing operations performed' does **not** include 'materials, parts or equipment'" (Opp'n 8 (emphasis in original)) is not supported by the Court's reading of the relevant definition. The two part

15

definition clearly equates "[w]ork or operations" and "[m]aterials, parts or equipment furnished in connection with such work or operations." In no way does it operate to imply the mutual exclusivity of the terms its comprises. Indeed it is hard to comprehend how the definition could be interpreted to mean that "operations" cannot include "materials, parts, or equipment" when the term "work" is paired with the term "operations" in the first numbered part of the definition, and the term "Your work"—which is being defined— explicitly *does* mean "[m]aterials, parts or equipment furnished in connection with such work or operations" under the second part of the definition.

In light of the rule to construe arguably ambiguous language in favor of the insured, *Ruge v. Utica First Ins. Co.*, --- N.Y.S.2d ----, 2006 WL 2257127, at *1 (N.Y. App. Div. Aug. 8, 2006), and the public policy against enabling an "insurer to fashion the litigation so as to minimize its liability under the [insurance policy]," *Jones Lang Wootton USA v. LeBoeuf, Lamb, Greene & McRae*, 674 N.Y.S.2d 280, 289 (N.Y. App. Div. 1998) (bracketed language in original) (quoting *North Star Reinsurance*, 82 N.Y.2d at 296), the Court reads the term "ongoing operations" in the TAP CGL Policy endorsement to mean operations under the Contract occurring prior to the completion of the work contracted for. The presence of TAP's equipment and installed and uninstalled electrical components at the job site is part of the performance of TAP's obligation to provide and install electrical systems and components for the Project under the Contract, and therefore integral to TAP's "ongoing operations performed for [the City]." (TAP CGL Policy, Proshansky Decl. at LM 10056.) There is no dispute that the performance under the Contract was not complete at the time of the flood.

This interpretation of "ongoing operations" as encompassing injuries occurring prior to completion of work, not just those occurring while active work is being done, is supported by New York state law. In *Perez v. N.Y. City Hous. Auth.*, 754 N.Y.S.2d 635 (N.Y. App. Div. 2003), the New York Appellate Division found that an injury arose out of a contractor's "ongoing operations" despite the fact that the contractor was not actively testing or installing a valve at the time of injury because the accident occurred after the replacement of valves, but before testing was completed. *See id.* at 636 ("[C]ontractor's work was 'ongoing' as long as the tests designed to assure proper performance remained undone."). *See also Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 Fed. Appx. 148 (2d Cir. 2006) (slip-and-fall arose out of "ongoing operations" of snowplow company despite fact that injury occurred after company had plowed and salted the lot because work under contract remained to be done) (unpublished opinion). In *O'Connor v. Serge Elevator Co.*, 58 N.Y.2d 655 (N.Y. 1982), the New York Court of Appeals found that an injury sustained by a worker "arises out of the work" of the indemnitor despite the fact that the injury occurred while the worker was leaving the site for his lunch break, because the uncompleted contract could not be performed without the workers coming and going. Thus, New York courts focus not on whether the injury occurs while actions are currently in progress, but rather whether it occurs before the work has been completed.

Furthermore, the fact that the cause of the occurrence was allegedly unrelated to TAP's work under the Contract does not preclude the claim from "aris[ing] out of" its "ongoing operations." The New York Appellate Division has held that when a named insured's employee was injured as the result of additional insured's negligent placement of a barricade—where the placement of that barricade had "*nothing* to do with [the named

17

insured]'s work for [the additional insured]"—that personal injury claim "arose out of [named insured]'s work." *Consol. Ed. v. U.S. Fid. & Guar. Co.*, 697 N.Y.S.2d at 620; *see also Tishman Constr. Corp. v. CNA Ins. Co.*, 652 N.Y.S.2d 742, 742 (N.Y. App. Div. 1997). Therefore, this Court finds that plaintiff's claim for property damage, allegedly resulting from the negligence of defendants, arises out of TAP's ongoing operations for the City, despite the fact that TAP was not actively working at the time of the injury and that the cause of the injury was allegedly unrelated to TAP's work. As such, the claim brought here by plaintiff-subrogee as alleged against the City seeks recovery from its own insured for the very risk for which the insured is covered, and is therefore barred by the antisubrogation rule.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss [18], having been converted to one for summary judgment, is granted, and all claims as alleged against the City by Liberty Mutual are dismissed.

SO ORDERED.

Dated: New York, New York
February 21, 2007

Richard J. Holwell
United States District Judge